**Angela DeLAURENTIS, Evelyn Blumberg, John Pizo, Joseph Coppola, Richard Reksc, et al., Plaintiffs,**

v.

**JOB SHOP TECHNICAL SERVICES, INC., d/b/a International Technical Services, Inc., Ralph Corace, individually and as Trustee of International Technical Services, Inc. 401(k) Profit Sharing Plan and Trust, CEP Consultants, Inc., Comprehensive Consulting Group, Edward Isaacs & Co. and The Equitable Life Assurance Society of the United States, Defendants.**

No. CV 95–0400.

United States District Court,
E.D. New York.

Jan. 18, 1996.

Westermann & Tryon by Michael D. Tryon, Garden City, New York, for Plaintiffs.

Meyer Suozzi English & Klein by Brian Seltzer, Mineola, New York, for Defendants Job Shop Technical Services, Inc., d/b/a International Technical Services, Inc., Ralph Corace, individually and as Trustee of International Technical Services, Inc. 401(k) Profit Sharing Plan and Trust.

D'Amato & Lynch by Ronald H. Alenstein, New York City, for Defendants CEP Consultants, Inc., Comprehensive Consulting Group.

Rosenman & Colin by Arthur S. Linker, New York City, for defendant Edward Isaacs & Co.

Norman L. Tolle, New York City, for The Equitable Life Assurance Society of the United States.

## MEMORANDUM & ORDER

WEXLER, District Judge.

Plaintiffs, a purported class of former employees of defendant Job Shop Technical Services, Inc. d/b/a International Technical Services, Inc. ("ITS") and participants in the International Technical Services, Inc. 401(k) Profit Sharing Plan and Trust (the "Plan"), brought the above-referenced action for violations of, *inter alia,* the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.,* and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* against ITS, the Plan's administrator, Ralph Corace ("Corace"), the Plan's trustee, CEP Consultants, Inc. and Comprehensive Consulting Group (collectively, "CEP"), the Plan's administrative consultants, Edwards Isaacs & Co ("EIC"), the Plan's accountant, and the Equitable Life Assurance Society of the United States ("Equitable"), the Plan's investment advisor. In addition, ITS and Corace cross-claimed against CEP, EIC, and Equitable for indemnification. Presently before the Court are the motions of CEP, EIC, and Equitable, pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6), for an order dismissing the Amended Complaint and the Crossclaim.

## I. BACKGROUND

According to the Amended Complaint, the Plan is an employee benefit plan under ERISA. Amended Complaint, ¶¶ 207, 209. Plaintiffs were employees of ITS and participants in the Plan, who elected to have portions of their salary withheld and paid to the Plan by ITS. *Id.* ¶ 221.

The Amended Complaint asserts that, between 1991 and 1994, Corace and ITS diverted in excess of $3 million from the Plan by failing to make contributions to the Plan as required by the Plan and ERISA. *Id.* ¶ 216.

Under the Plan, Corace is named trustee and ITS administrator. *Id.* ¶ 211.

The Amended Complaint also alleges that CEP, EIC, and Equitable participated in the wrongdoing. According to the Amended Complaint, CEP drafted the Plan and acted as a consultant, providing to the Plan such services as the preparation of quarterly benefit statements (the "quarterly statements"). *Id.* ¶ 212. Equitable, the investment manager for the Plan, provided data used by CEP in compiling the quarterly statements. *Id.* ¶ 213. EIC provided accounting services for the Plan, including audits, preparation of financial statements, and rendering of certified opinions as to the financial condition of the Plan. *Id.* ¶ 214.

In 1991, EIC allegedly became aware that ITS was delinquent in making contributions to the Plan, yet declined to notify the Plan's participants or the United States Department of Labor. *Id.* ¶¶ 214–215. In 1993 and 1994, the quarterly statements, indicating that ITS had fully contributed to the Plan, were prepared by CEP with "actual or constructive" knowledge that the information contained therein was false. *Id.* ¶ 217. Again, in 1993 and 1994, EIC had "actual or constructive" knowledge that funds were being diverted from the Plan, yet failed to take action. *Id.* ¶ 219.

The first cause of action asserts that ITS, Corace, and CEP are "fiduciaries," as that term is defined under ERISA, and that their failure to contribute to the Plan and "intentional misrepresentation concerning the payment of these contributions" constitutes a breach of fiduciary duties under ERISA. *See id.* ¶¶ 226–30, 233. The second cause of action, also asserted against ITS, Corace, and CEP, for breach of co-fiduciary duties under ERISA, adds the charge that "[d]efendants ... knew or should have known that the [quarterly] statements were false or fraudulent" and that the quarterly statements "were an attempt to mislead Plan participants by concealing the true facts concerning the payment of ... [c]ontributions." *Id.* ¶ 239.

The third and fourth causes of action accuse ITS and Corace of violating ERISA by failing to make timely contributions and

breaching fiduciary duties. *Id.* ¶¶ 242–47. The fifth and sixth causes of action allege that, in preparing the quarterly statements, CEP "knowingly concealed" acts or omissions that violated ERISA, and, therefore, charge CEP with breach of fiduciary duty under ERISA.

The eighth cause of action, asserted against CEP, EIC, and Equitable as nonfiduciaries for knowing participation in a fiduciary's breach, alleges that these defendants "had actual or constructive knowledge of the breach of fiduciary duty by [ITS] and Corace" and demands that they be held jointly and severally liable for the breach because "their failure to take appropriate action to remedy [the breach]" constitutes knowing participation in the breach. The Amended Complaint does not specify the legal derivation of the eighth cause of action—*i.e.*, whether it is brought under ERISA, federal common law, or state law.

The seventh cause of action charges ITS, Corace, and CEP with violations of RICO.

## II. *DISCUSSION*

█ Dismissal of a complaint under Fed. R.Civ.P. 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–06, 2 L.Ed.2d 80 (1957)). In considering a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, the complaint will be construed in the light most favorable to the plaintiffs, and the court accepts as true all facts alleged in the complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Baldly conclusory statements that fail to provide notice of the basic events of which the plaintiff complains need not be credited by the court. *Moscowitz v. Brown*, 850 F.Supp. 1185, 1990 (S.D.N.Y.1994) (citing *Haviland v. J. Aron & Co.*, 796 F.Supp. 95, 97 (S.D.N.Y.1992), *aff'd*, 986 F.2d 499 (2d Cir.1992), *cert. denied*, 507 U.S. 1051, 113 S.Ct. 1945, 123 L.Ed.2d 650 (1993)).

The first, second, fifth, and sixth causes of action seek reimbursement pursuant to the civil enforcement provisions of ERISA, 29 U.S.C. § 1132(a). The statute reads, in pertinent part, that participants may bring a civil action for appropriate relief pursuant to ERISA provisions that impose liability for breach of fiduciary duty by a fiduciary with respect to a plan, *See id.* § 1132(a)(2). The first, second, fifth, and sixth causes of action seek to hold CEP liable as a fiduciary under the Plan. CEP disclaims fiduciary status, and moves to dismiss the four claims on that ground.

ERISA defines fiduciary as follows:

[A] person is a fiduciary with respect to a plan to the extent that (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). In addition, the United States Department of Labor has published guidelines which make clear that "a person who performs purely ministerial functions ... within the framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary." 29 C.F.R. § 2509.75–8.

█ Although "[c]ourts have generally applied a liberal interpretation to 'fiduciary' within the ERISA context," *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F.Supp. 814, 820 (S.D.N.Y.1992), mere labels do not without more confer fiduciary status, *see Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir.1987). Whether an entity is a fiduciary must be determined by focusing on the function performed; " 'fiduciary status exists with an activity enumerated in the statute over which the entity exercises discretion and control.' " *Geller v. County Line Auto Sales, Inc.*, No. CV 94–3123, 1995 WL 313123, at *3 (E.D.N.Y. May 17, 1995) (quot-

ing *Blatt,* 812 F.2d at 812). Professionals, such as attorneys or accountants, are not fiduciaries unless they provide more than ordinary professional services to a plan. *Carpenters' Local Union No. 964 Pension Fund v. Silverman,* No. CV 93–8787, 1995 WL 378539, at *2 (S.D.N.Y. June 26, 1995) (citations omitted). Professional service providers must "do more"; they must, for example, "exercise discretionary authority or control over the plan's management or authority or control over its assets ... [to be considered] fiduciaries." *Id.* (citing *Mertens v. Hewitt Assocs.,* 948 F.2d 607, 610 (9th Cir. 1991), *aff'd,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (other citations omitted)).

█ The Amended Complaint identifies CEP as the entity responsible for drafting the Plan and preparing the quarterly statements to be sent to participants. These allegations fall well short of establishing that CEP exercised discretion or control over an activity enumerated in ERISA. There is no allegation that CEP possessed any type of decision-making authority, or that it had discretion with respect to any relevant aspect of the plan. The only action that plaintiffs allege CEP undertook, beyond its performance of the ordinary services that it was hired to provide, is its failure to properly reflect the financial status of the Plan in the quarterly statements. This omission does not confer fiduciary status. *See Geller,* 1995 WL 313123, at *4 ("Proof of the fact of [a] misrepresentation alone does not establish fiduciary status; it is the amount of discretion possessed that is determinative.").

Because plaintiffs have not alleged facts sufficient to establish CEP's fiduciary status, CEP's motion should be granted insofar as it seeks dismissal of the first, second, fifth, and sixth claims.

The eighth cause of action is asserted against CEP, EIC, and Equitable for knowing participation in ITS's and Corace's fiduciary breaches. Although the Amended Complaint does not specify a body of law under which the claim is brought, plaintiffs' submission in opposition to the motions to dismiss makes clear that the claim is brought, in the alternative, under federal common law, ERISA, or state common law. The latter two theories are easily disposed of.

█ State law causes of action are preempted by ERISA, so long as they "relate to" the plan in the sense that they have "a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987); *see* 29 U.S.C. § 1144(a) (stating that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"). The eighth cause of action, framed under state law, would accuse CEP, EIC, and Equitable of participating in the diversion of funds from the Plan. A claim of this nature "relates to" the Plan, and is, therefore, preempted by ERISA.

█ Similarly, plaintiffs cannot bring their knowing participation claim under ERISA. ERISA does not authorize suits for money damages against nonfiduciaries. *Mullins v. Pfizer, Inc.,* 23 F.3d 663, 666 (2d Cir.1994) (citing *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 250–51, 113 S.Ct. 2063, 2066–67, 124 L.Ed.2d 161 (1993)). Nevertheless, under 29 U.S.C. § 1132(a)(3), a participant in a plan may bring a lawsuit "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or ... to obtain other appropriate equitable relief ... to redress such violations or ... to enforce any provisions of this subchapter or the terms of the plan." A claim for restitution may be available under § 1132(a)(3). *See, e.g., Mertens,* 508 U.S. at 252–53, 113 S.Ct. at 2067; *Geller,* 1995 WL 313123, at *4. Restitution "seeks to deprive the defendant of money or any other thing of value that he gained from tortious or otherwise wrongful activity or that it would be unconscionable for him to retain because received from the plaintiff in circumstances under which he knew or should have known that the plaintiff expected compensation." *Reich v. Continental Casualty Co.,* 33 F.3d 754, 755 (7th Cir.1994). Even if the Amended Complaint could be read to have sufficiently pleaded unjust action on the part of CEP, EIC, and Equitable, it does not claim that the nonfiduciaries were enriched as a result of their alleged wrongdoing. As such, as-

suming a cause of action exists pursuant to § 1132(a)(3) for restitution, plaintiffs have failed to state a claim thereunder. *See Geller,* 1995 WL 313123, at *4 (dismissing restitution claim under § 1132(a)(3) because complaint did not allege "a benefit to the defendants enuring from [their alleged] misrepresentation"); *see also Mertens,* 508 U.S. at 254–55, 113 S.Ct. at 2068.

■ Plaintiffs are left with their argument that a cause of action lies against CEP, EIC, and Equitable under federal common law. The Second Circuit has held that "one who knowingly participates in an ERISA fiduciary's breach of duty is jointly and severally liable with the fiduciary for resulting damages under ERISA." *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 281 (2d Cir.1992). In *Mertens,* a majority of the Supreme Court expressed grave doubt, in *dicta,* as to whether an implied cause of action exists against nonfiduciaries for knowing participation in fiduciaries' misconduct. The majority did not find the cause of action in the language of the statute, and made clear its view that Congress's omission was not likely an "oversight." *Mertens,* 508 U.S. at 252–53, 113 S.Ct. at 2067. "The authority of the courts to develop a 'federal common law' under ERISA," the majority cautioned, "is not the authority to revise the text of the statute." *Id.* 508 U.S. at 259, 113 S.Ct. at 2070.

The decision in *Kaszycki,* which came down prior to *Mertens,* relied on legislative history indicating that " 'Congress wanted federal courts to fill any gaps in [ERISA] by looking to traditional trust principles.' " 974 F.2d at 280 (quoting *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 16–18 (2d Cir.1991)). Finding that the language of ERISA did not delineate a cause of action against nonfiduciaries for participation in fiduciaries' breaches and that ERISA typically preempts state law claims of that nature, the Second Circuit's holding filled a "gap" by providing employee benefit plan participants and beneficiaries with a mechanism to hold nonfiduciaries accountable for wrongdoing that contributed to the deprivation of ERISA benefits. *Id.* The Supreme Court's *dicta* in *Mertens* addresses the Sec-

ond Circuit's logic head on, explaining why the gap, if one exists, is narrow at best. The majority reasoned:

> Under traditional trust law, although a beneficiary could obtain damages from third persons for knowing participation in a trustee's breach of fiduciary duties, only the trustee had fiduciary duties. ERISA, however, defines "fiduciary" not in terms of formal trusteeship, but in functional terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties.... *Professional service providers ... become liable for damages when they cross the line from advisor to fiduciary....*

508 U.S. at 262, 113 S.Ct. at 2071 (emphasis added, citations omitted).

The Courts of Appeal that have addressed the issue since *Mertens* have found the *dicta* instructive and held that no cause of action for participation by a nonfiduciary in a fiduciary's breach exists under federal common law. *See, e.g., Reich v. Compton,* 57 F.3d 270, 284 (3d Cir.1995); *Reich v. Continental Casualty Co.,* 33 F.3d 754, 757 (7th Cir.1994); *Reich v. Rowe,* 20 F.3d 25, 31 (1st Cir.1994). The First Circuit concluded:

> All things considered, judicial remedies for nonfiduciary participation in a fiduciary breach fall within the line of cases where Congress deliberately omitted a potential cause of action rather than the cases where Congress has invited the courts to engage in interstitial lawmaking.

*Rowe,* 20 F.3d at 31. The Seventh Circuit, after acknowledging that the Supreme Court had undertaken "all the relevant considerations" and come to "an unmistakable conclusion," determined that the *Mertens dicta* "provides the best, though not an infallible, guide to what the law is" and instructed that "it will ordinarily be the duty of a lower court to be guided by it." *Continental Casualty,* 33 F.3d at 757.

Nevertheless, district judges in this circuit have adhered to *Kaszycki. See, e.g., Silverman,* 1995 WL 378539, at *5; *Gruby v. Brady,* 838 F.Supp. 820, 834–35 (S.D.N.Y.1993). In *Silverman,* the court reasoned that "four dissenting justices in *Mertens* flatly stated their belief that ERISA did not bar a suit

against nonfiduciaries" while "the majority only questioned the existence of such a cause of action" and then concluded that the "well-reasoned and definitive pronouncement" in *Kaszycki* remained controlling in the Second Circuit.

*Kaszycki* is the law in the Second Circuit. As for *Mertens*, it is unnecessary for the Court in the instant case to assess whether the *dicta* has diminished the precedential value of the Second Circuit's pronouncement; assuming a cause of action exists under federal common law, plaintiffs have failed to adequately plead their claim.

▮ The elements of a cause of action for knowing participation in a breach of fiduciary duty include: (1) breach by a fiduciary of a duty owed to plaintiff; (2) defendant's knowing participation in the breach; and (3) damages. *Kaszycki*, 974 F.2d at 281–82. The second element consists of three prongs: (a) knowledge of the primary violator's status as fiduciary; (b) knowledge that the primary's conduct violates a fiduciary duty; and (c) participation, which has been defined as an affirmative assistance—or a failure to act when required to do so—that enables a breach to proceed. *Id.* at 282–84.

▮ The Amended Complaint sufficiently pleads a breach of fiduciary duty by ITS and Corace. Plaintiffs' charge that CEP, EIC, and Equitable knowingly participated in that breach, however, lacks factual basis. The Amended Complaint states that CEP drafted the Plan and prepared the quarterly statements; that Equitable provided data used by CEP in the quarterly statements; and that EIC prepared financial statements for the Plan, but these allegations do not without more permit the inference that these defendants had "actual or constructive knowledge" of the breach, or that they "knowingly participated" in the breach because of "their failure to take appropriate action" to remedy the breach. Plaintiffs allege that EIC became aware of the fiduciary breach, but do not attempt to explain how or why EIC became aware. Similarly, they allege that CEP "knew or should have known" that the quarterly statements were "false or fraudulent" and that the quarterly statements "were an attempt to mislead Plan participants," but do

not explain how or why CEP knew or should have known, or why CEP would practice such deception. Indeed, the whole of plaintiffs' allegations fail to provide a hint as to what motivation CEP, EIC, or Equitable might have for participating in the breach. Also missing are allegations that any one of CEP, EIC, or Equitable knew that ITS and Corace were fiduciaries or that their conduct breached a fiduciary duty. The eighth cause of action does not meet minimum pleading requirements, and, accordingly, must be dismissed.

▮ CEP has also moved to dismiss the seventh cause of action, wherein it is charged with violating RICO, along with ITS and Corace. To state a claim under 18 U.S.C. § 1962(c), a plaintiff must sufficiently allege, *inter alia*, that the defendant, through the commission of at least two predicate acts, constituting a "pattern" of "racketeering activity," conducts or participates directly or indirectly in the affairs of an "enterprise," *see* 18 U.S.C. § 1962(c); *see also Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983), and that plaintiff was "injured in his business or property by reason of [the] violation." 18 U.S.C. § 1964(c); *see Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir.1990). To state a claim under § 1962(d), a plaintiff must sufficiently allege that each defendant knowingly agreed to commit two or more predicate acts in furtherance of a common unlawful purpose. *See Hecht*, 897 F.2d at 25.

▮ To satisfy the predicate acts requirement—an element common to claims under both § 1962(c) and § 1962(d)—plaintiffs allege that CEP either violated or knowingly agreed to violate 18 U.S.C. § 664, which makes it a federal crime to embezzle, steal, or unlawfully and willfully abstract or convert assets of any employee benefit plan. *See* 18 U.S.C. § 664. Under § 664, a plaintiff must, at a minimum, sufficiently plead "fraudulent intent." *See United States v. Andreen*, 628 F.2d 1236, 1241 (9th Cir.1980). For the same reasons that plaintiffs have failed to meet the pleading burden set forth by Fed.R.Civ.P. 8 and 12 on their knowing participation claim, plaintiffs have failed to

meet the requirements of Fed.R.Civ.P. 9 on the fraudulent intent element of § 664. Because plaintiffs have not sufficiently pleaded CEP's commission of at least two predicate acts, the RICO claim must be dismissed as to CEP.

CEP, EIC, and Equitable have also moved to dismiss the Crossclaims asserted against them by ITS and Corace. Without assessing the merits, the Court denies these motions without prejudice.

### III. CONCLUSION

For the above reasons, the motions to dismiss the Amended Complaint are granted. The first, second, and seventh causes of action are dismissed, without prejudice, insofar as they assert claims against CEP; the fifth, sixth, and eighth claims are dismissed in their entirety, without prejudice. Plaintiffs are granted leave to file a Second Amended Complaint within thirty days of the date of this Memorandum and Order.

The motions made by CEP, EIC, and Equitable to dismiss the Crossclaims are denied without prejudice to the moving parties' right to renew within thirty days of service of the Answer and Crossclaims to the Second Amended Complaint, or, if a Second Amended Complaint is not filed, within thirty days of the date of this Memorandum and Order.

SO ORDERED.