**Elaine L. CHAO, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**John HOCHULI, Jr., Estate of Gustav Lengenfelder; and Diamond Manufacturing Corporation Profit Sharing Plan, Defendants.**

**John Hochuli, Jr., Third Party Plaintiff,**

v.

**Dennis Scott Mair and Dennis Scott Mair Actuarial Services, Ltd., Third Party Defendants.**

**Estate of Gustav Lengenfelder Third Party Plaintiff,**

v.

**Dennis Scott Mair and Dennis Scott Mair Actuarial Services, Ltd., Third Party Defendants.**

No. 97–CV–7528 (TCP).

United States District Court, E.D. New York.

Jan. 22, 2003.

John George Campbell, Labor United Staes Department, U.S. Dept. of Labor, New York, NY, for Plaintiff.

Jeffrey S. Dubin, Garden City, NY, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This action arises under the Employee Retirement Income Act of 1974 ("ERISA") as amended 29 U.S.C. § 1001 *et seq.*, and is brought by the Secretary of Labor, Elaine L. Chao (the "Secretary"), pursuant to ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2), (5), to obtain relief for alleged breaches of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109.

Presently before this Court is the Secretary's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In their briefs, defendants do not contest that the money transfers at issue violated ERISA. Defendant John Hochuli, Jr. ("Hochuli") only opposes the requested equitable relief of restitution and an accounting. The Estate of Gustav Lengenfelder ("Lengenfelder") contends that it should not be held liable as a fiduciary or co-fiduciary of the pension plan and also opposes the remedy of restitution.

For the reasons set forth below, the Secretary's Motion is granted. Defendants are jointly and severally liable for and shall pay the sum of $480,000 plus prejudgment interest. Defendant Hochuli is permanently enjoined from further service as a fiduciary or service provider to any employee benefit plan and is ordered to provide an accounting of plan assets.

## BACKGROUND

### A. Factual Background

The Diamond Manufacturing Corporation Profit Sharing Plan (the "Plan") was an employee benefit plan established to provide benefits to employees of the Diamond Manufacturing Corporation (the "Corporation"). According to Plan documents, Hochuli and Lengenfelder were the trustees of the Plan. (Pl. 56.1 Stmt. ¶¶ 4, 5.) Hochuli and Lengenfelder were also each 50% owners and officers of the Corporation. (Pl. 56.1 Stmt. ¶¶ 6, 7.) Hochuli does not dispute that he was a fiduciary of the Plan.

Between December 26, 1991, and June 29, 1993, $480,000 was transferred from the Plan to the Corporation. According to promissory notes executed by the defendants, the transfers were documented as unsecured loans. (Pl. 56.1 Stmt., Exs. G–N.) The Secretary contends that the transfers were used to pay back a bank loan owed by the corporation. Hochuli contends that the money was used to pay the customary and ordinary expenses of the Corporation, including the salaries of the Plan participants.

Lengenfelder has stipulated, through counsel, that his signature is present on seven of the eleven checks, which amounted to $255, 000. (Pl. 56.1 Stmt., Ex. O.) Lengenfelder further agrees that the transfers were prohibited transactions under ERISA. (Illmensee Decl. ¶ 5.) The Corporation is now defunct and has no assets.

Hochuli has submitted a letter dated September 14, 1998, in which he states that he is resigning as a trustee of the Plan. (Hochuli 56.1 Stmt., Ex. C.)

### B. Procedural History

The Secretary commenced this lawsuit by filing a Complaint on December 24, 1997. Defendants subsequently answered and each defendant filed a Third–Party Complaint against Dennis Scott

Mair,("Mair"), who provided legal advice to Hochuli and the Plan. Mair answered Hochuli's Third–Party Complaint on April 13, 1998, and Lengenfelder's Third–Party Complaint on June 5, 1998.

On March 10, 1999, Hochuli moved this Court for a protective order to prevent being compelled to testify based on the Fifth Amendment privilege. Magistrate Judge Vicktor Pohorelsky denied Hochuli's motion, but ruled that Hochuli could assert his Fifth Amendment privilege in response to specific questions that might tend to incriminate him.

Lengenfelder died on July, 7, 2001. The Estate of Lengenfelder argued that it should not be substituted for Mr. Lengenfelder due to defective service of process. On April 17, 2002, Magistrate Judge Wall issued a Report and Recommendation stating that the Estate of Lengenfelder had waived any defense based on defective service. This recommendation was adopted as an Order of this Court on June 24, 2002, and the Estate of Lengenfelder was substituted as a defendant in this action.

The Secretary now brings this Motion. The Motion seeks an Order of this Court ordering restitution to restore with appropriate interest the monies taken from the Plan. The Secretary further requests the equitable relief of an accounting and an injunction barring Hochuli from serving as a fiduciary or service in any ERISA plan.

Lengenfelder's Estate argues that it should not be held liable as a fiduciary or co-fiduciary of the Plan since Lengenfelder did not actively participate in the management of the Plan. Due to Lengenfelder's recent death, the only form of relief available to the Secretary is restitution.

Hochuli does not oppose the Secretary's request for an injunction barring him from an ERISA Plan fiduciary and has already stated that he has already resigned his position as a fiduciary of the Plan by letter dated September 14, 1998. Hochuli does contest the accounting to the extent it requires him to give testimony or make statements on the grounds that he has already turned over every document in his possession and that he should not be compelled to testify because it would violate his Fifth Amendment right against self-incrimination. Hochuli also contests the remedy of restitution since he argues that he was not unjustly enriched.

## DISCUSSION

### A. Summary Judgment Standard

Courts may grant summary judgment when the moving party demonstrates: (1) that there is no genuine issue of material fact for trial and (2) that it is entitled to judgment as a matter of law. Fed.R.Civ.P. Rule 56(c). Facts are material if they "might affect the outcome of the suit under governing law." *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 103 (2d Cir.2001)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). On motions for summary judgment, courts must construe all facts and draw all inferences in favor of the non-moving party. *See Howley v. Town of Stratford*, 217 F.3d 141, 150–51 (2d Cir.2000).

"Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge, whether he is ruling on a motion for summary judgment or for directed verdict." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. However, in order to survive a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988)(quoting *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## B. Liability Under ERISA

### 1. Fiduciary Status

Under ERISA, "a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan or *exercises any authority* or control respecting management *or disposition of such assets*, . . . or (iii) he has any discretionary *responsibility* in the administration of such plan." 29 U.S.C. 1002(21)(A) (emphasis added). Section 1103(a) provides that once a trustee has been appointed, "the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan." 29 U.S.C. 1103(a).

■ Hochuli does not dispute that he was a fiduciary of the Plan. Lengenfelder acknowledges that he was named a trustee of the Plan but argues that he was not a fiduciary of the Plan because he never participated in the actual administration of the Plan or provided investment advice. (Lengenfelder Mem. In Opp. at 4.) In support of his position Lengenfelder argues that courts in this Circuit have analyzed whether the "person actually performs the fiduciary functions".[1] (Lengenfelder Mem. In Opp. at 3.)

The cases cited by Lengenfelder are not applicable to this action because in none of the cited cases were the defendants named as trustees. As one commentator has noted, "[A] person who has *binding power* to make decisions setting plan policy, inter-

pretations, and practices or procedures qualifies as a fiduciary regardless of his formal title." 67 ALR Fed 186 (citing 5A FRES, Employee Benefits § 37:70)(empahsis added). In *Blatt v. Marshall & Lassman,* 812 F.2d 810, 813 (2d Cir.1987) cited by Lengenfelder, the Second Circuit stated that "[t]he definition of 'fiduciary' under ERISA focuses on the exercise, as well as the possession, of authority or control."[2]

In this case Lengenfelder clearly was a fiduciary since he had the authority to dispose of Plan assets and because he exercised that authority by signing seven of the eleven checks which transferred Plan assets. As the Fifth Circuit has held, "a person who is repeatedly referred to as a trustee of an employee benefit plan, and who signs documents and takes actions regarding the Plan in an official capacity, is, as a matter of law, a fiduciary of the Plan under ERISA, with all appurtenant duties and responsibilities." *Donovan v. Mercer,* 747 F.2d 304, 309 (5th Cir., 1984); *See also Russo v. Pension Benefit Guaranty Corp.,* 1991 U.S. Dist. LEXIS 16774 at *16, 1991 WL 254570 (S.D.N.Y.1991) (holding that plan documents denoting she was a plan trustee and her signature on two cards permitting her to withdraw funds established that she had control over plan's assets and that she was a fiduciary.)

The fact that Lengenfelder argues that he was never involved in the actual administration of the Plan or rendered investment advice is not sufficient to relieve him of his status as a fiduciary. He clearly had

---

[1]. While neither party has submitted the actual Plan documents naming defendants as trustees, neither defendant has refuted that they were named as trustees or that they did not have the authority to transfer Plan assets.

[2]. Finding that the failure to execute a Notice of Change Form prevented the return of plaintiff's contribution, the Second Circuit held that the defendants were fiduciaries of the plan since they exercised control over plan assets. *Id.* Unlike Lengenfelder the defendants in *Blatt* were not named trustees.

authority over the Plan's assets and exercised that control.

### 2. Violation of Fiduciary Duties ERISA

Having established that defendants were fiduciaries of the Plan, this Court must consider whether Lengenfelder breached his fiduciary duty. In order to be liable, he must be found to have breached his own fiduciary duties or be found liable for the breaches of his co-fiduciary. *Donovan v. Mercer*, 747 F.2d 304, 309 (5th Cir., 1984).

ERISA imposes upon fiduciaries certain responsibilities. 29 U.S.C. 1104(a)(1), provides that a fiduciary shall discharge his duties, "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims."

In addition, ERISA § 406(a), 29 U.S.C. § 1106, prohibits transactions with "parties in interest". Specifically, Section 1106(a)(1) states that, "[a] fiduciary with respect to the plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ... (B) lending of money or other extension of credit between the plan and a party in interest ... (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

A Party In Interest includes (1) fiduciaries of an employee benefit plan and corporations, (2) partnerships trusts or estates of which 50% of the stock or other interest is owned by the foregoing. 29 U.S.C. 1002(14).

In addition, 29 U.S.C. 1105 provides that a fiduciary shall be liable for a breach of fiduciary responsibility of another fiduciary in the following circumstances:

(1) if he participates knowingly in, or undertakes to conceal, an act or omission of such other fiduciary, knowing such an act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

■ Lengenfelder argues that he should not be liable for the admittedly improper transfers because he "had no knowledge that Hochuli's transfers violated the statute." (Lengenfelder Mem. In Opp. at 4.) Lengenfelder also claims that when he questioned Hochuli about the transactions he was told that they were "legal and proper." (Id.) Lengenfelder acknowledges that he did not question Mair about the propriety of the transfers. (Id.) Instead, Lengenfelder asserts that he had a limited education and that he trusted Hochuli, whom he had known for about 40 years. (Id.)

These arguments are unpersuasive. By signing seven of the eleven checks the transfers were not only Hochuli's, but Lengenfelder's as well. The transfers were made to the Corporation, which was also partially owned by Lengenfelder. Since Lengenfelder does not contest that the transactions between the Corporation and the Plan were prohibited transactions with Parties in Interest, which they were, Lengenfelder breached his fiduciary duty by violating Section 1106(a)(1).

Lengenfelder further breached his fiduciary duties under Section 1104(a)(1), which imposes a duty of care. Lengenfelder clearly had knowledge that the

$255,000 (the aggregate amount of the seven checks he signed) had been transferred to the Corporation from the Plan. Despite this, Lengenfelder admittedly did not question the Plan's attorney about the transfers or take any other action to ascertain the propriety of the transfers.[3] As the Court in *Russo v. Unger*, stated, "the law requires more from a fiduciary than blind faith in another fiduciary's integrity." *Russo*, 1991 U.S. Dist. LEXIS 16774 at *21, 1991 WL 254570 (S.D.N.Y.1991). The Court in *Russo*, further stated:

"[a] fiduciary also is liable for the loss caused by the breach of fiduciary responsibility by another fiduciary of the plan if he enables the other fiduciary to commit a breach through his failure to exercise prudence ... in carrying out his specific responsibilities. For example, A and B are co-trustees and are to jointly manage plan assets. A improperly allows B to have sole custody of the plan assets and makes no inquiry into his conduct. B is thereby enabled to sell the property and to embezzle the proceeds. A is liable for a breach of fiduciary responsibility."

*Id.* at *20. (quoting H.R.Rep. No. 1280, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad. News 4639, 5038, 5080.)

These undisputed facts therefore constitute a clear breach of the duty of care required by Section 1104(a)(1).

## C. Requested Relief

29 U.S.C. § 1109(a) gives the Court broad discretion in awarding relief against fiduciaries who breach their responsibilities, including rescission of unlawful transactions, recoveries of money lost to the plan, and "such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

### 1. Restitution

Defendants argue that restitution is not proper absent proof that he was unjustly enriched. This is incorrect. Section 1109(a) specifically provides that restitution is proper for fiduciaries. It states, in relevant part:

"Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, **and** to restore to such plan any profits of such fiduciary which have been made through the use of the plan by the fiduciary ..."

(emphasis added.)

 Thus, while a fiduciary is required to return any profits acquired through the use of plan assets, the plan assets are to be returned even if there is no such profits. The case *DeLaurentis v. Job Shop Tech. Services*, 912 F.Supp. 57, cited by defendants, may be easily distinguished. In that case, Judge Wexler of this District held that in order to state a claim under Section 1132(a)(3) against non-fiduciaries, there must be a allegation of unjust enrichment. *Id.* at 62–63. In this case, the Court finds that both Hochuli and Lengenfelder were fiduciaries of the Plan and that restitution is proper under Section 1109(a).

Accordingly, the Court finds that restitution is proper against both Hochuli and

---

3. Lengenfelder posits that the transfers were undetected because they were concealed form the Internal Revenue Service and Department of Labor by Hochuli and Mair. However, Lengenfelder clearly knew of the transfers because he signed the checks and promissory notes.

Lengenfelder and that defendants are jointly and severally liable.

### 2. Prejudgment Interest

■ While not specifically provided for by 29 U.S.C. § 1109, the Second Circuit has held that a court has discretion to award prejudgment interest against fiduciaries. *Diduck v. Kaszycki & Sons Contractors Inc.*, 974 F.2d 270, 286 (2d. Cir. 1992). "Prejudgment interest is not intended to penalize the trustee but serves as compensation for the use of money withheld." *Id.*

The Court finds that prejudgment interest is appropriate in this case. As stated in the Second Circuit's decision in *Diduck*, the appropriate rate of prejudgment interest should include an analysis of what the plan earned during the time in question and what it would have earned had the money lost due to the breach been available.[4] *Id.* at 286.

Because the parties have not submitted the requisite information, the parties are ordered to submit such information in a timely manner so that the Court may determine the appropriate rate of interest.

### 3. Accounting and Injunction

■ Hochuli's argument that he can not be forced to give an accounting which requires him to give testimony or to make statements that may incriminate him is similar to his previous motion to prevent his deposition. This Court finds the reasoning of Magistrate Judge Pohorelsky on the previous motion applicable here. Thus, Hochuli is ordered to provide an accounting, but is not prohibited from asserting his privilege against self-incrimina-

tion to specific questions that might tend to incriminate him.

Based on the record, the Court further finds that it is proper to enjoin Hochuli from future participation in ERISA plans. Accordingly, Hochuli is prohibited from serving as fiduciary or service provider to any employee benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., as amended.

## CONCLUSION

The Secretary's Motion for summary judgment is GRANTED. Defendants John Hochuli, Jr. and the Estate of Gustav Lengenfelder are jointly and severally liable for and shall pay the sum of FOUR HUNDRED AND EIGHTY THOUSAND DOLLARS ($480,000), plus prejudgment interest. The rate of prejudgment interest will be determined by the Court after the parties have submitted the requisite information outlined above.

Hochuli is hereby permanently enjoined from further service as a fiduciary or service provider to any employee benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., as amended. Hochuli is further ordered to provide an accounting of plan assets, but may invoke his privilege against self-incrimination to specific questions which may tend to incriminate him.

SO ORDERED.

---

4. This analysis was endorsed as a proper method of determining the rate of prejudgment interest in ERISA breach of fiduciary duty cases in *Kinek v. Paramount Communications*, 22 F.3d 503, 514 (2d Cir.1994).