In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1250

BRUCE BINGHAM, MARY GILES BINGHAM, AND
SAM BINGHAM,

*Plaintiffs-Appellants*,

*v.*

NEW BERLIN SCHOOL DISTRICT,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06-CV-533—**Patricia J. Gorence**, *Magistrate Judge*.

ARGUED SEPTEMBER 5, 2008—DECIDED DECEMBER 4, 2008

Before FLAUM, ROVNER, and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge*. Sam Bingham was a high school student in the New Berlin School District in Wisconsin when his parents, Mary and Bruce Bingham, determined that he needed special education services. Toward that end, they sent a letter to the principal of the New Berlin West High School informing him of Sam's condition and requesting that the New Berlin School District per-

sonnel provide a special education evaluation. Sam and his parents allege that District personnel failed to evaluate Sam, implement an individual education program, or notify them of their due process rights as required by the Individuals with Disabilities Education Act (IDEA). At some point in early 2004, Sam's parents removed him from the District's high school and enrolled him at a private school where he remained until graduation.

On January 10, 2006, Sam's parents filed a request for a due process hearing with the Wisconsin Department of Public Instruction. In their due process hearing request, they alleged that the District had failed to comply with certain provisions of the IDEA, and requested that the District reimburse the Binghams for the cost of Sam's private school tuition in the amount of $15,638. The Department of Public Instruction scheduled the hearing for March 20, 2006, but on February 28, 2006, the District, without admitting liability, voluntarily issued a check to the Binghams in the full amount they requested.

The plaintiffs accepted the payment but did not withdraw the due process hearing request. In response to the District's motion for summary judgment in the Wisconsin Division of Hearings and Appeals, the administrative law judge concluded that, because of the payment, "there remains no actual existing controversy that this tribunal has the authority to adjudicate. The continuation of these proceedings would have no practical effect on the underlying controversy, so the matter has become moot." *In re Matter of Due Process Hearing Request for Sam Bingham, by his Parents, Mary Giles and Bruce Bingham v. New Berlin Sch.*

*Dist.*, Case No. LEA-06-001 at 1-2, Wisconsin Div. of Hearings and Appeals (Mar. 14, 2006) (R. at 42) (document 6). Plaintiffs' counsel then sent a letter to Administrative Law Judge Coleman noting that judicial imprimatur is required to obtain attorneys' fees under the IDEA and requesting that Judge Coleman declare that the Binghams had prevailed in their suit. (R. at 42) (document 2). Judge Coleman refused the request. *Id.* (document 1).

The Binghams appealed Judge Coleman's decision to the district court below where the judge concluded that the Binghams were not prevailing parties, denied their motion for attorneys' fees, and dismissed the action. The Binghams appeal once more to this court, and we affirm.

The Binghams expended much ink and paper (and many minutes at oral argument) parading the misdeeds of the District. We have no doubt that students suffer myriad ill effects when a school district dismisses their serious needs and violates the IDEA. This case, as it stands before us, however, is not about the merits of the issue—that is, whether the District violated the IDEA. Thus even if the District admitted, and we concluded, that it was one hundred percent liable for violations of the IDEA (of course it does not, and we cannot—the merits have never been adjudicated), this appeal involves one issue only and that is whether the plaintiffs are entitled to attorneys' fees. The answer to that question is governed solely and completely by a Supreme Court case never mentioned anywhere in the plaintiffs' brief or even in their reply: *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Services*, 532 U.S. 598 (2001). In

*Buckhannon*, the Court rejected the previously widely followed catalyst theory that posits that, for purposes of determining an award of attorneys' fees, a plaintiff prevails if he achieves the desired outcome of litigation even if it results from a voluntary change in the defendant's conduct. *Id.* at 600. Rejecting the catalyst theory, the *Buckhannon* court emphasized that in order to be deemed a prevailing party, there must be a "material alteration in the legal relationship of the parties"—that is in the form of an enforceable judgment or court-ordered consent decree. It could not be clearer that a voluntary settlement by the defendant—the precise situation presented here—does not entitle a plaintiff to attorneys' fees. *Id.* at 606.

If there were any room to argue that the holding in *Buckhannon* does not apply to the IDEA, that door has long since closed.[1] In 2003 this court applied the holding in *Buckhannon* to IDEA cases as has every other circuit court to have considered the question. *See T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 478 (7th Cir. 2003). *See also Smith v. Fitchburg Pub. Sch.*, 401 F.3d 16, 22 (1st Cir. 2005); *J.C. v. Reg'l Sch. Dist. 10*, 278 F.3d 119, 125 (2d Cir. 2002); *John T.*

---

[1] There have been not-unreasonable attempts to argue that the *Buckhannon* decision does not apply to IDEA cases. *See T.D v. La Grange School Dist. No. 102*, 222 F. Supp. 2d 1062 (N.D. Ill. 2002), *rev'd*, 349 F.3d 469 (7th Cir. 2003). *See also* Mark C. Weber, *Litigation Under the Individuals with Disabilities Education Act After Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 65 Ohio St. L.J. 357, 399 (2004).

*ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 556 (3d Cir. 2003); *G ex rel. RG v. Fort Bragg Dependent Sch.,* 343 F.3d 295, 310 (4th Cir. 2003); *John T. ex rel. Robert T. v. Iowa Dept. of Educ.*, 258 F.3d 860, 863-64 (8th Cir. 2001); *P.N. v. Seattle Sch. Dist. No. 1*, 474 F.3d 1165, 1167 (9th Cir. 2007); *Alegria v. Dist. of Columbia*, 391 F.3d 262, 263 (D.C. Cir. 2004).

When presented with the unambiguous holding of *Buckhannon* at oral argument, the Bingham's attorney could only respond that the facts of this case are different. The ruling of *Buckhannon*, however, does not depend on the facts of a case, but rather only on a simple procedural posture. A court may award attorneys' fees only in those cases where the plaintiff has prevailed by securing a material alteration of the legal relationship between the parties, either, for example, by court ordered consent decree or an enforceable judgment. In this case the plaintiffs have neither. The judgment of the district court, consequently, must be affirmed.

Although we took the opportunity to elaborate on our decision over the course of a few pages, this matter could have been resolved in one sentence with a citation to *Buckhannon* and *T.D. v. LaGrange*. And when a matter is so easily and definitively resolved, one wonders why an appellant has pursued the matter at all. It appears that counsel for the appellant was aware of the *Buckhannon* decision and its implication from the get-go. After the administrative law judge dismissed the matter as moot, the Bingham's attorney wrote to the judge stating, "[a]s your Order of Dismissal does not show that either of the

parties prevailed, and the Federal District Court will probably want judicial imprimatur to show how the case was resolved, I am an enclosing an Order for your signature. *Buckhannon Board & Care Home v. West Va. D.H.H.R.*, 532 U.S. 598 (2001)." (R. at 42) (document 2). The administrative law judge, however, declined to issue any further orders. It appears that counsel for the appellant was well-aware from the early days of this case, not only that *Buckhannon* mattered, but that it controlled the outcome of this attorneys' fees matter. And if for some reason he was not, both the district court opinion and the District's brief on appeal made it clear. Yet counsel for the appellant failed to cite the controlling law in either his brief or reply brief on appeal. In short, Appellants' counsel understood that the law required prevailing party status and that they had not obtained that outcome. Nevertheless, counsel continued to litigate this case without a reasonable basis for doing so, expending the resources of this court and the opposing party.

The plaintiffs could have preserved an argument for the Supreme Court urging reversal of the *Buckhannon* decision based on myriad scholarly critiques. *See e.g. U.S. v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007) (noting that when Supreme Court precedent remains good law, a litigant may assert the argument in this court for the sole purpose of preserving it for Supreme Court review). We are aware that there has been substantial criticism of the *Buckhannon* decision, and that the rule it announced falls particularly hard on parents of disabled children litigating under the IDEA. Parents of disabled children are unlikely to have significant financial resources to

expend on legal fees and may prefer to spend the resources they do have on private education rather than fighting the school system to provide the services to which they are rightfully entitled. Lynn M. Daggett, *Special Education Attorney's Fees: Of Buckhannon, The IDEA Reauthorization Bills, and the IDEA as Civil Rights Statute*, 8 U.C. Davis J. Juv. L. & Pol'y 1, 41 (2004). They tend to seek equitable relief that is significant to them or to the community at large where the cost of those services is far lower than the cost of litigating to receive the services. Catherine R. Albiston & Laura Nielsen, *The Procedural Attack on Civil Rights: The November 20, 2008 Empirical Reality of Buckhannon for the Private Attorney General*, 54 UCLA L. Rev. 1087, 1090-91 (2007). The rule of *Buckhannon*, these scholars offer, points the incentives in the wrong direction. A school district can delay providing expensive educational services as long as possible and hope that the parents either tire of the battle, re-matriculate elsewhere, or that the child ages out of the school system. By doing so they do not risk having to pay the opposing side's attorneys' fees at the end of the protracted battle, provided they capitulate sometime prior to judgment. Albiston & Nielsen, *supra*, at 1109. The situation may require parents to choose between a settlement that provides educational services to their child, but sacrifices recovery of attorneys' fees, or continuing to litigate indefinitely while the child goes without the needed services in place, in an uncertain attempt to become a prevailing party and recover attorneys' fees. *Id.* at 1111. Of course, these choices also create conflicts between IDEA clients and their attorneys. Dagget, *supra*, at 42. And ultimately, the

very real risk of losing attorneys' fees will significantly decrease the pool of attorneys willing to represent clients other than those who are very wealthy and can afford to pay fees on their own. The *Buckhannon* resolution also may induce IDEA attorneys to make unreasonable demands of school districts to prevent the district from mooting the case by voluntarily agreeing to the parents' requests. *See* Weber, *supra* note 1 at 399-400. The District argues that *Buckhannon* gives school districts the incentive to settle and pour money into a child's education rather than into expensive litigation. Settlement is, no doubt, a worthwhile result of *Buckhannon*, although many scholars have argued that *Buckhannon* has the effect of prolonging litigation before settlement. *See* Stefan R. Hanson, *Buckhannon, Special Education Disputes, and Attorneys' Fees: Time for a Congressional Response Again*, 2003 BYU Educ. & L.J. 519, 546 (2003). And of course, if a school district is providing an inadequate education to any child, time is of the essence.

Although this is an important debate, policy arguments of this nature are better directed to a legislative body or to the Supreme Court. We are an intermediate appellate court, and our task is to follow Supreme Court precedent where it has direct application in a case. *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989); *see also Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts."). *Buckhannon* is directly on point and dictates in unambiguous terms that the Binghams are not prevailing parties entitled to attorneys'

fees. The only room for further litigation was to preserve an argument for reversing *Buckhannon* in the Supreme Court. Bingham's attorneys chose instead simply to ignore the controlling recent authority of the highest Court.

Pursuant to Federal Rule of Appellate Procedure 38, we have the authority to award attorneys' fees and costs to the District for this appeal. Before awarding such sanctions, however, Rule 38 requires that either the opposing party file a separate motion for sanctions or that we give notice that we are considering sanctions. *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752 (7th Cir. 2005).

The decision of the district court is AFFIRMED. We order the appellants and their counsel to show cause, within fourteen days, as to why they should not be required, under Rule 38 of the Federal Rules of Appellate Procedure, to pay the District's costs and reasonable attorneys' fees on appeal.