**Deborah A. KENSETH, Plaintiff,**

v.

**DEAN HEALTH PLAN, INC., Defendant.**

**No. 08–cv–1–bbc.**

United States District Court, W.D. Wisconsin.

Feb. 14, 2011.

Lisa Claire Goldman, Lawton & Cates, S.C., Madison, WI, for Plaintiff.

Richard Lee Schmidt, Catherine M. Rottier, Boardman, Suhr, Curry & Field LLP, Madison, WI, for Defendant.

## OPINION AND ORDER

BARBARA B. CRABB, District Judge.

This case brought under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461, and state law is on remand from the Court of Appeals for the Seventh Circuit. *Kenseth v. Dean Health*

*Plan,* 610 F.3d 452 (7th Cir.2010). The court of appeals affirmed the dismissal of plaintiff Deborah Kenseth's claim under state law and her claim for equitable estoppel, but it reversed the dismissal of her claim for breach of fiduciary duty. The court "remand[ed] for a determination as to whether Kenseth is seeking any form of equitable relief that is authorized by 29 U.S.C. § 1132(a)(3) and, if so, for further proceedings on that claim as are consistent with this opinion." *Id.* at 483. The parties have filed new motions for summary judgment, which are ready for decision.

The facts of the case are set forth in the appellate opinion as well as in this court's first summary judgment opinion, *Kenseth v. Dean Health Plan, Inc.,* 568 F.Supp.2d 1013 (W.D.Wis.2008), so a full recitation is not necessary. However, I will provide a brief overview of the case for context.

In 1987, plaintiff had gastric bands placed around her stomach to help her lose weight. Years later she needed to have the bands removed after she began experiencing acid reflux that was damaging her esophagus. By that time, she had changed employers and had a different health plan through defendant. In 2005, she called defendant's customer service number and was told that her health insurance would cover the procedure. However, after plaintiff underwent surgery, defendant denied plaintiff's claim under a provision that precluded coverage for procedures related to obesity. The court of appeals concluded that these facts supported a claim for breach of fiduciary duty under ERISA:

> The facts support a finding that Dean breached its fiduciary duty to Kenseth by providing her with a summary of her insurance benefits that was less than clear as to coverage for her surgery, by inviting her to call its customer service representative with questions about coverage but failing to inform her that whatever the customer service representative told her did not bind Dean, and by failing to advise her what alternative channel she could pursue in order to obtain a definitive determination of coverage in advance of her surgery.

*Kenseth,* 610 F.3d at 456.

In her summary judgment brief, plaintiff argues that this court may decide as a matter of law that defendant breached its fiduciary duty to her. (The court of appeals did not resolve that question because plaintiff had not filed her own motion for summary judgment.) In addition, she has identified various remedies in her second amended complaint that she says fall within the meaning of "appropriate equitable relief" under § 1132(a)(3). In particular, she asks the court to order defendant to amend its policies and procedures in various ways to prevent a similar problem from recurring in the future. Am. Cpt. ¶¶ 68a–68f, dkt. # 59. The rest of her requests involve payment or collection of her medical expenses. *Id.* at ¶¶ 68g–68m. Finally, she asks for an award of attorney fees under 29 U.S.C. § 1132(g)(1). The Secretary of the Department of Labor has filed an amicus brief in favor of plaintiff, arguing that appropriate equitable relief includes "make-whole monetary recoveries and disgorgement of ill-gotten gains." Amicus Br., dkt. # 73, at 6.

I need not resolve the question whether any factual issues remain on plaintiff's breach of fiduciary duty claim because I cannot grant plaintiff the relief she seeks regardless whether a breach occurred. The court of appeals expressed skepticism in its opinion regarding the likelihood that plaintiff was seeking appropriate equitable relief and neither plaintiff nor the Secretary has shown the court's tentative conclusion to be misguided. Plaintiff's request for defendant to "hold her harmless for the cost of her surgery and treatment"

is a thinly-disguised request for compensatory damages that may not be awarded under § 1132(a)(3). Although plaintiff's requests for policy changes are properly classified as equitable, they are not justiciable because plaintiff is no longer a participant in one of defendant's plans and she has pointed to no evidence suggesting that this fact will change in the foreseeable future. Finally, plaintiff has not shown that she is entitled to an award of attorney fees under § 1132(g)(1). Accordingly, I am granting defendant's motion for summary judgment.

Plaintiff may see this as a harsh result. Defendant has refused to provide her any relief after lulling her into believing that she had coverage for an expensive operation, only to reverse course after the procedure was performed, leaving her with a stack of medical bills. Many might be surprised to learn that defendant has no legal duty to make things right under those circumstances.

It is certainly unfortunate that the parties have not found a way to settle this matter out of court. Plaintiff's medical expenses likely create a great hardship for her, but the amount it would have cost defendant to approve plaintiff's claim (approximately $35,000) is almost certainly less than the amount that defendant has expended in litigation. However, regardless of the reasons for defendant's conduct, I am not free to ignore the distinction between equitable and legal relief that Congress and the Supreme Court have made in § 1132(a)(3).

## OPINION

### A. *Appropriate Equitable Relief*

■ The threshold question is whether plaintiff has requested any relief that is authorized by 29 U.S.C. § 1132(a)(3), which the parties agree is the only rele-vant remedial provision in this case. That section authorizes a lawsuit "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The court of appeals stated in this case that plaintiff must be "able to identify a form of equitable relief that is appropriate to the facts of this case. If she cannot, then she will have failed to make out a claim on which relief may be granted, and the claim may be dismissed on that basis." *Kenseth*, 610 F.3d at 483.

In addressing this matter, I must acknowledge that I am not writing on a blank slate. The court of appeals did not definitively resolve the question whether plaintiff had asked for "appropriate equitable relief" because the parties did not raise it, but the court did discuss the matter at length. The court began with a summary of the law, noting that "compensatory damages and other forms of legal relief are beyond the scope of the relief authorized" and that appropriate equitable relief might include injunctions or mandamus. *Id.* at 482.

The court stated that restitution "can be either legal or equitable in nature." *Id.* The "classic example" of restitution as an equitable remedy occurs when "the defendant has wrongfully obtained or withheld the plaintiff's money or property, and a constructive trust or equitable lien is imposed to ensure that the defendant disgorges his ill-gotten gain and the plaintiff receives that to which he is entitled." *Id.* However, the court noted that plaintiff "has not alleged, and there is no evidence in the record suggesting, that [defendant] is holding money or property that rightfully belongs to her." *Id.*

The court noted allegations in the complaint suggesting that plaintiff believed she was entitled to damages caused by the wrongful denial of benefits. *Id.* However, plaintiff chose not to pursue a "denial-of-benefits claim" under § 1132(a)(1)(B), presumably because of "the broad discretion that [defendant] enjoys in construing the terms of the Certificate, which in turn would necessitate a showing that its decision to deny [plaintiff]'s claim was arbitrary and capricious." *Id.* at 483. The court reminded plaintiff that she "may not obtain comparable relief" to a denial-of-benefits claim "under the guise of a claim for breach of fiduciary duty." *Id.*

The court concluded with its preliminary assessment of the relief plaintiff requests:

> The relief that Kenseth truly seems. to seek is relief that is legal rather than equitable in nature. Her complaint, for example, alleges that she has suffered a pecuniary loss and other consequential damages as a result of Dean's actions. R. 8 ¶¶ 32–33. This would be consistent with our earlier discussion of the ways in which a jury might find that Kenseth was harmed by Dean's alleged breach of fiduciary duty. Supra at 481. But this is the sort of make-whole relief that is not typically equitable in nature and is thus beyond the scope of relief that a court may award pursuant to section 1132(a)(3).

*Id.*

▮ It is not entirely clear how this court should treat the discussion of the court of appeals. The discussion is dicta and therefore not binding, but it is "considered dicta," which generally "provides the best, though not an infallible, guide to what the law is, and it will ordinarily be the duty of a lower court to be guided by it." *Reich v. Continental Casualty Co.*, 33 F.3d 754, 757 (7th Cir.1994). It is clear from its discussion that the court of appeals has strong doubts about the availability of appropriate equitable relief in this case. Thus, it is plaintiff's burden to show that the court "overlooked some point that might have altered its view." *Id.* Plaintiff has failed to do this.

### 1. *Medical expenses*

Unfortunately, plaintiff and the Secretary are imprecise in their description of the relief to which they believe plaintiff is entitled. In her second amended complaint, plaintiff requests various forms of relief that would require defendant or affiliated companies to pay her medical expenses, but in her briefs she groups these into two basic categories:

- "an injunction requiring [defendant] to hold [plaintiff] harmless for the cost of her surgery and treatment, or, in the alternative, hold her harmless for any costs in excess of the amount [defendant] would have paid if the surgery and treatment had been covered";

- "an injunction requiring [defendant] to provide her the same relief the plan provided to other participants who were mistakenly informed there was coverage when in fact the plan did not provide coverage."

Plt.'s Br., dkt. # 66, at 20, 24.

Although plaintiff attempts to depict these potential remedies as "injunctions," it is clear that both would require defendant to pay her medical expenses and thus are appropriately viewed as a request for money damages. *Mondry v. American Family Mutual Insurance Co.*, 557 F.3d 781, 804 (7th Cir.2009) ("Almost invariably ... suits seeking (whether by judgment, injunction or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensa-

tion for loss resulting from the defendant's breach of legal duty.") (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918–919, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting)); *see also Great–West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 211, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) ("[A]ny claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction."); *Edelman v. Jordan*, 415 U.S. 651, 668–67, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (injunction directing state officers to release funds illegally withheld is indistinguishable from award of money damages).

In her amicus brief, the Secretary of the Department of Labor makes a similar argument that plaintiff is entitled to her choice of "make-whole monetary payments" or a "disgorgement of profits," though she does not always carefully distinguish between the two concepts. Both plaintiff and the Secretary use a variety of terms without indicating whether they view them as interchangeable or whether some are distinct and require a separate analysis. Amicus Br., dkt. # 73, at 8, 13, 16, 18 (describing remedies of "make whole monetary relief," "surcharge," "unjust enrichment," "restitution," "disgorgement of profits," "loss recovery," "out-of-pocket expenses and liabilities" and "other monetary recoveries"). Plaintiff adopts much of the Secretary's terminology in later briefs, but she continues to use the term "hold harmless remedies." Plt.'s Resp. Br., dkt. # 88, at 26.

Distilled, these requests seem to be a combination of compensatory damages (payment of plaintiff's medical costs) and restitution (payment of funds unjustly retained as a result of the breach), although plaintiff and the Secretary do not emphasize those terms. *Mertens v. Hewitt Associates*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) ("Although they

often dance around the word, what petitioners in fact seek is nothing other than compensatory damages—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties."). More generally, plaintiff and the Secretary believe that each of these theories of relief should lead to the same result: plaintiff should not be required to pay for her care out of her own pocket and defendant should pay all of her medical bills or negotiate with the providers.

■ In arguing that money damages fall under the meaning of "appropriate equitable relief" under § 1132(a)(3), plaintiff and the Secretary have an uphill battle. "Money damages are ... the classic form of legal relief," *Mertens*, 508 U.S. at 255, 113 S.Ct. 2063, which means that "the 'equitable relief' authorized by section 1132(a)(3) will normally not include monetary relief," especially compensatory damages. *Mondry*, 557 F.3d at 804. The Supreme Court has acknowledged that "the distinction between 'equitable' and 'remedial' relief is artless," *Mertens*, 508 U.S. at 259 n. 8, 113 S.Ct. 2063, because it may turn on archaic practices that serve no function today. *Great–West*, 534 U.S. at 216–17, 122 S.Ct. 708. Nevertheless, the Court has concluded that it must uphold the distinction when Congress invokes it, *Mertens*, 508 U.S. at 259 n. 8, 113 S.Ct. 2063; *Great–West*, 534 U.S. at 217, 122 S.Ct. 708, which means that I must do the same.

a. Compensatory damages or "make whole" relief

The Secretary's argument is the boldest and the most developed, so I will consider it first. She does not deny that, ordinarily, compensatory damages, or "make whole" remedies as she calls them, are classified as a legal remedy rather than an equitable one. However, she believes that

a more fact-specific analysis is required. In particular, she says that some money damages *against a fiduciary* may be classified as "appropriate equitable relief" under § 1132(a)(3) because courts of equity had authority to award such relief:

> Depending on the circumstances the beneficiary could, among other remedies, "charge the trustee with any loss that resulted from the breach of trust, or with any profit made through the breach of trust." That payment, sometimes called "surcharge," required the breaching fiduciary to pay an "amount necessary to compensate fully for the consequences of the breach" by, for example, "restoring the values of the trust . . . to what they would have been if the trust had been properly administered."

Amicus Br., dkt. # 73, at 9 (citing *Restatement (Third) of Trusts* § 205 & cmt. a, at 223 (1992) (Third Restatement); *United States v. Mason*, 412 U.S. 391, 398, 93 S.Ct. 2202, 37 L.Ed.2d 22 (1973); *Mosser v. Darrow*, 341 U.S. 267, 270–273, 71 S.Ct. 680, 95 L.Ed. 927 (1951); *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 458, 463–464, 59 S.Ct. 275, 83 L.Ed. 285 (1939); 3 Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 205, at 238–39 (4th ed.1987); Black's Law Dictionary 1579 (9th ed.2009) (defining "surcharge")). According to the Secretary, equity courts had authority to award this type of relief because they had "exclusive jurisdiction over actions involving trusts." Amicus Br., dkt. # 73, at 8. Under the Secretary's view, a court must determine whether requested relief is "equitable" under § 1132(a)(3), not simply by looking at the type of relief at issue, but by asking whether an equity court would have had authority to award the relief requested in an analogous lawsuit against the same type of defendant. In other words, the Secretary's position is that the same relief could be classified as "legal" with respect to one

defendant but as "equitable" with respect to another defendant.

The Secretary's argument might have been plausible as a matter of first impression, but it disregards the Supreme Court's decision in *Mertens* and the discussion of the court of appeals in this case. In fact, the Solicitor General made the same argument in *Mertens:* " 'although a beneficiary's action to recover losses resulting from a breach of duty superficially resembles an action at law for damages, . . . such relief traditionally has been obtained in courts of equity' and therefore 'is, by definition, equitable relief.' " *Mertens*, 508 U.S. at 255–56, 113 S.Ct. 2063 (quoting Brief for United States as Amicus Curiae 13–14). The Court acknowledged that "courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust" and that "money damages were available in those courts against the trustee," *id.* 256, 113 S.Ct. 2063, but it rejected the view that the meaning of the term "equitable relief" in § 1132(a)(3) means "whatever relief a court of equity is empowered to provide in the particular case at issue." *Id.;* see also *Great–West*, 534 U.S. at 219, 122 S.Ct. 708 ("In *Mertens,* we rejected the claim that the special equity-court powers applicable to trusts define the reach of § 502(a)(3)."). Instead, the court favored a view that the term "refer[s] to those categories of relief that were typically available in equity." *Id.* In other words, the question is not whether an equity court had the power to grant a particular form of relief, but whether the plaintiff is "seek[ing] a remedy traditionally viewed as 'equitable,' such as injunction or restitution." *Id.* at 255, 113 S.Ct. 2063; see also *id.* at 263–64, 113 S.Ct. 2063 (White, J., dissenting) (reading majority opinion to hold that "the remedies available [under § 1132(a)(3) ] are limited to the 'traditional' equitable remedies, such

as injunction and restitution, and do not include compensatory damages").

The Court adopted its view as a matter of statutory construction rather than a simple historical analysis: "Since all relief available for breach of trust could be obtained from a court of equity, limiting the sort of relief obtainable under § 502(a)(3) to 'equitable relief' in the sense of 'whatever relief a common-law court of equity could provide in such a case' would limit the relief not at all. We will not read the statute to render the modifier superfluous." *Id.* at 257–58, 113 S.Ct. 2063.

The Secretary grudgingly acknowledges the holding in *Mertens*, but she argues that it does not bar relief in this case because the defendant in *Mertens* was not a fiduciary as is the defendant in this case. This distinction is important, the Secretary says, because equity courts only had "concurrent jurisdiction" under trust law to award damages in cases brought against non-fiduciaries, but "exclusive jurisdiction" in cases against fiduciaries. Amicus Br., dkt. # 73, at 10, 14.

The obvious problem with the Secretary's argument is that there is no hint in *Mertens* that the Court was relying on a distinction between fiduciaries and non-fiduciaries. The Secretary says that *Mertens* includes a discussion "on the concurrent jurisdiction of the equity courts, which only concerned claims against non-fiduciaries insofar as equity courts had *exclusive* jurisdiction over fiduciaries," *id.* at 14 (emphasis in original), but she does not cite any passages from *Mertens* in support of this observation. In fact, the Court did not discuss the concept of "concurrent jurisdiction" in *Mertens*, much less rely on it. Rather, the primary concern of the Court was to give meaning to the term "equitable relief" in the statute. That is, if "equitable relief" includes compensatory damages, then the distinction in the stat-ute between "equitable relief" and other forms of relief is "meaningless," rendering the limitation superfluous. *Mertens*, 508 U.S. at 259 n. 8, 113 S.Ct. 2063. This rationale would apply equally regardless whether the defendant is a fiduciary or a non-fiduciary. That may be why both plaintiff and the Secretary ignore this aspect of *Mertens*.

If I accepted the Secretary's argument, it would mean that the same term in the same provision of the same statute would have a different meaning depending on the identity of the defendant. It may be true that the Court did not expressly consider the application of its holding in *Mertens* to fiduciaries, but it certainly gave no indication in the opinion that its interpretation of § 1132(a)(3) was limited to particular parties. In light of the highly unusual result that the Secretary's reading of the provision would produce, one would expect that the Court would have given some suggestion in its opinion that its interpretation was not intended to be universal, if that was in fact the intent of the Court. Particularly because the government in *Mertens* raised a similar argument to the one the Secretary is raising in this case, the Court's silence is telling. Even the dissenting justices did not suggest that § 1132(a)(3) should have one meaning for fiduciaries and another meaning for non-fiduciaries. *Mertens*, 508 U.S. at 263–64, 113 S.Ct. 2063 (White, J., dissenting) ("[I]t is entirely reasonable in my view to construe § [1132](a)(3)'s reference to 'appropriate equitable relief' to encompass what was equity's routine remedy for such breaches—a compensatory monetary award calculated to make the victims whole, a remedy that was available against both fiduciaries and participating nonfiduciaries").

The Secretary argues that, unless *Mertens* is interpreted as leaving the door

open for awards of "make-whole monetary relief," it means that the Court implicitly overturned *Oliver v. Piatt*, 44 U.S. (3 How.) 333, 11 L.Ed. 622 (1845), in which the Court allowed such relief to be awarded against fiduciaries for a breach of trust. This argument misses the point of the Court's holding in *Mertens*. The Court was not determining the remedies available under the common law of trusts, it was determining the remedies available under a particular statutory provision. In fact, the decision rejects the proposition that any remedy available under the law of trusts is available under ERISA. Thus, *Mertens* has no bearing on *Oliver* or any other case outside the ERISA context.

The Secretary acknowledges in a footnote that other courts have declined to recognize a distinction between fiduciaries and non-fiduciaries under § 1132(a)(3). Amicus Br., dkt. # 73, at 18 n. 7. In fact, it seems that her argument has been rejected by every court of appeals to consider it. *Amschwand v. Spherion Corp.*, 505 F.3d 342, 347 (5th Cir.2007) ("[O]nly the nature of the claim and the relief sought—not the status of the litigants—determine the scope of available § 502(a)(3) recovery."), cited with approval in *Kenseth*, 610 F.3d at 482–83; *Coan v. Kaufman*, 457 F.3d 250, 264 (2d Cir.2006) ("*Mertens* precludes the conclusion that relief sought from fiduciaries is 'equitable' under ERISA section 502(a)(3) solely because it was generally available in equity at the time of the divided bench."); *Callery v. U.S. Life Insurance Co., in City of New York*, 392 F.3d 401, 409 (10th Cir.2004) ("[W]e must adhere to the Supreme Court's rather emphatic guidance and therefore conclude that in a suit by a beneficiary against a fiduciary, the beneficiary may not be awarded compensatory damages as 'appropriate equitable relief' under § 502(a)(3) of ERISA"); *McLeod v. Oregon Lithoprint Inc.*, 102 F.3d 376, 378 (9th Cir.1996) ("We

reject McLeod's argument because the status of the defendant, whether fiduciary or nonfiduciary, does not affect the question of whether damages constitute 'appropriate equitable relief' under § 502(a)(3)."); *Armstrong v. Jefferson Smurfit Corp.*, 30 F.3d 11, 13 (1st Cir.1994) (characterizing as "weak" argument that meaning of "equitable relief" in § 1132(a)(3) is different with respect to fiduciaries and non-fiduciaries).

The Court of Appeals for the Seventh Circuit has not addressed the question directly, but the Secretary believes that the court would be inclined to agree with her view because it has made distinctions between fiduciaries and non-fiduciaries in determining available remedies under ERISA. However, each of the cases cited by the Secretary involved the question whether a beneficiary or participant could obtain *restitution*, not compensatory damages or "make whole" relief. *E.g., May Dept. Stores Co. v. Federal Insurance Co.*, 305 F.3d 597, 602–03 (7th Cir.2002); *Clair v. Harris Trust and Savings Bank*, 190 F.3d 495, 498–99 (7th Cir.1999); *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 710 (7th Cir.1999); *Reich*, 33 F.3d at 756. This is an important difference because, in *Mertens*, 508 U.S. at 255, 113 S.Ct. 2063, the Court recognized that restitution is "a remedy traditionally viewed as 'equitable.' "

It is true that restitution is not *always* an equitable remedy, *Mondry*, 557 F.3d at 806, and that the Court of Appeals for the Seventh Circuit seems to have adopted a test similar to the one proposed by the Secretary for determining whether restitution is "equitable" or "legal" in a given case:

> Whether [restitution] is equitable depends merely on whether it is being sought in an equity suit. If the benefi-

ciary of a trust sought an accounting of the profits of a defalcating trustee—a form of restitutionary relief—the accounting if ordered would be ordered in a suit in equity, and the remedy thus would be equitable, while a suit seeking the identical relief against a nonfiduciary would normally be a suit at law and the relief sought therefore legal.

*Reich*, 33 F.3d at 756. Thus, there may be some tension between *Mertens* (which rejects the view that the scope of equitable relief under § 1132(a)(3) is determined by the law of trusts) and cases such as *Reich* (which suggest that some forms of relief may be "equitable" if sought against a fiduciary and "legal" if sought against a non-fiduciary). However, in *Reich*, the court resolved that tension by discussing the unique nature of restitution:

> The Court's search in *Mertens* was, however, for *distinctively* equitable relief on the one hand and, on the other, *distinctively* legal relief, such as damages, which though sometimes awarded by a court of equity under the "cleanup" doctrine is the classic remedy at law. Unfortunately restitution straddles this divide. The Court may have seemed to place it on the equitable side; other cases, too, have described restitution as an equitable remedy. But we think it more likely that all the Court meant in any of these cases was that restitution, in contrast to damages, is a remedy commonly ordered in equity cases and therefore an equitable remedy in a sense in which damages, though occasionally awarded in equity cases, are not. Restitution is merely not an exclusively equitable remedy like an injunction.

*Id.* (emphasis in original) (citations omitted). Thus, to the extent plaintiff and the Secretary are relying on this circuit's distinction between fiduciaries and non-fiduciaries, that distinction is limited to resti-

tution and does not apply to compensatory damages or "make whole" relief, which never qualifies as "equitable" relief under § 1132(a)(3). I will consider below whether plaintiff has a potential claim for restitution.

Even if I adopted the fiduciary/non-fiduciary distinction urged by the Secretary and plaintiff and concluded that compensatory damages against a fiduciary qualify as equitable relief, I could not order defendant to pay plaintiff's medical expenses because that would not be "appropriate" equitable relief. In *Varity Corp. v. Howe*, 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Court held that an ERISA plaintiff could not use the "catch all" provision of § 1132(a)(3) to obtain relief authorized by another, more specific provision:

> [T]he statute authorizes "appropriate" equitable relief. We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

*Id.* (citations omitted). The court of appeals echoed *Varity* in *Mondry*, 557 F.3d at 805, stating, "where relief is available to a plan participant under other provisions of the statute, relief may not be warranted under section 1132(a)(3)." In particular, the court of appeals held that a plan participant could not use § 1132(a)(3) to recover benefits denied wrongfully, a remedy authorized under § 1132(a)(1)(B). *Id.* Relying on *Varity* and *Mondry*, the court of appeals made it clear in this case that

plaintiff could not proceed under a theory that she was entitled to compensation for her medical expenses because that relief could have been pursued under § 1132(a)(1)(B):

> Hints may be found in certain paragraphs of Kenseth's complaint suggesting that Dean was wrong in refusing to cover her Roux–en–Y procedure and attendant hospitalization, R. 8 ¶¶ 27–28, 31.... This is, in effect, an allegation that Dean erred in denying Kenseth's claim for insurance benefits. However, a denial-of-benefits claim may only be pursued under section 1132(a)(1)(B). As we have noted, the absence of such a claim from Kenseth's complaint is almost certainly explained by the broad discretion that Dean enjoys in construing the terms of the Certificate, which in turn would necessitate a showing that its decision to deny Kenseth's claim was arbitrary and capricious. Notwithstanding the obstacles to relief under section 1132(a)(1)(B), Kenseth may not obtain comparable relief under the guise of a claim for breach of fiduciary duty.

*Kenseth*, 610 F.3d at 482–83 (citations omitted).

Neither plaintiff nor the Secretary even attempt to address this issue in their briefs. That alone is fatal to plaintiff's request for compensatory damages or "make whole" relief.

A final, related problem with a request for medical expenses is that it would not be "appropriate" relief because it is not tied to the defendant's alleged violation of the law. Even under plaintiff's and the Secretary's theory of equitable relief, plaintiff's damages would be limited to those caused by defendant's breach of fiduciary duty. Amicus Br., dkt. # 73, at 9 ("Depending on the circumstances the beneficiary could, among other remedies, charge the trustee with any loss that re-

sulted from the breach of trust, or with any profit made through the breach of trust."); Plt.'s Br., dkt. # 88, at 28 ("The basis of the remedy restores the plaintiff ... back to the position she was in before the breach occurred."). Plaintiff's and the Secretary's briefs seem to assume that the breach was the denial of benefits, but that is clearly incorrect. As noted by the court of appeals, plaintiff has never argued that defendant misinterpreted the plan when it concluded that she was not entitled to coverage for the removal of her gastric bands. Assuming that defendant breached its fiduciary duty, that breach was defendant's failure to give plaintiff the correct information about her lack of coverage before undergoing the procedure. Thus, the proper "make whole" remedy would be to put plaintiff in the position should would be in if defendant had informed her in advance that her procedure was not covered. This distinguishes plaintiff's situation from the those in the cases the Secretary cites, *Varity* and *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574 (7th Cir. 2000). In both cases, reinstatement to the plan was the appropriate remedy because the defendant's misinformation was the reason the plaintiff lost coverage.

Plaintiff has not shown that she could have elected to forgo the surgery. Although she says in her brief that she could have waited until she "obtained alternative insurance coverage for the procedure, or obtained the procedure elsewhere for less," Plt.'s Br., dkt. # 88, at 30, she cites no evidence that alternatives were available to her. Because it is plaintiff's burden to show that she is entitled to relief, *Kenseth*, 610 F.3d at 483, the absence of evidence on this point means that I must assume that plaintiff could not have mitigated her losses if defendant had given her the correct information.

### b. Restitution

■ The next question is whether plaintiff has requested any relief that is properly characterized as restitution. On this issue, the court of appeals gave a tentative answer of "no":

> The classic example [of restitution] is when the defendant has wrongfully obtained or withheld the plaintiff's money or property, and a constructive trust or equitable lien is imposed to ensure that the defendant disgorges his ill-gotten gain and the plaintiff receives that to which he is entitled. But Kenseth has not alleged, and there is no evidence in the record suggesting, that Dean is holding money or property that rightfully belongs to her.

*Id.* at 482. *See also Great–West,* 534 U.S. at 214, 122 S.Ct. 708 ("[A] a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.").

Again, neither plaintiff nor the Secretary respond to the discussion of the court of appeals. Instead, they contradict it without acknowledging they are doing so by arguing that defendant has been unjustly enriched because it is retaining the money that it should have paid to plaintiff or her providers for her medical expenses. In addition, they argue that the providers have been unjustly enriched because they are charging plaintiff more than they would have charged her if defendant had provided coverage. (Apparently, defendant receives a substantial discount from providers for covered procedures, but individual patients do not receive the same discount.)

Plaintiff does not cite any authority for the view that the conduct of the medical providers may be considered for the purpose of determining any restitution that defendant might owe. In any event, plaintiff's request for restitution suffers from similar problems as her request for compensatory damages: it overlaps with relief that would be awarded under § 1132(a)(1)(B) and the alleged unjust benefit to defendant is not tied to the alleged breach of fiduciary duty. In particular, plaintiff has not argued that defendant has benefited from providing plaintiff misinformation; its decision on coverage would have been the same either way. In the cases plaintiff and the Secretary cite, the court ordered the defendant to pay an amount that could not be awarded under § 1132(a)(1)(B) and that the defendant had retained because of its breach. Usually, this was interest that the defendant accumulated after wrongfully denying benefits. *E.g., Mondry,* 557 F.3d at 805–06. Because plaintiff is not challenging the correctness of the decision to deny benefits, these cases are not instructive.

### 2. *Injunctive relief*

■ Included in plaintiff's second amended complaint are several requests to require defendant to change the plan and other policies and procedures in order to prevent similar mistakes from happening in the future. There is no dispute that these proposed injunctions qualify as equitable relief; the question is whether they are justiciable.

Plaintiff has not received insurance from defendant since the end of 2006, when her employer chose a new plan. Thus, defendant argues that plaintiff does not have standing to request changes to defendant's policies or procedures because any changes could not benefit someone such as plaintiff who is not a plan participant.

"A plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). The Supreme Court established long ago that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Rather, "[t]o invoke Article III jurisdiction a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury." *Sierakowski v. Ryan,* 223 F.3d 440, 443 (7th Cir.2000). *See also City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("threat of injury must be both real and immediate, not conjectural or hypothetical") (internal quotations omitted).

Plaintiff raises a number of responses to defendant's argument, but none are persuasive. (The Secretary's brief does not address this issue.) First, she says that ERISA is one of a number of federal statutes that authorize individual plaintiffs to act as "private attorneys-general" to protect the public interest even if the plaintiff cannot benefit from a favorable ruling. This is simply not the case. Regardless whether a statute's primary purpose is to protect individual rights or the public interest, part of the "irreducible constitutional minimum of standing" is that the plaintiff must show that success on her claim is likely to redress a harm that is personal to her. *E.g., Bennett v. Spear,* 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); *Kyles v. J.K. Guardian Sec. Services, Inc.,* 222 F.3d 289, 295 (7th Cir.2000). Plaintiff attempts to make a similar analogy to criminal law, but this makes no sense because justiciability doctrines in civil law have no application to criminal cases brought by the government.

In the alternative, plaintiff argues that a live controversy still exists because of the possibility that one day she will be covered under one of defendant's plans again. She relies on the fact that defendant "provides health insurance for approximately 200,000 employees of 1,500 employers," Plt.'s Br., dkt. # 88, at 23. However, she cites no evidence suggesting that her employer is likely to change plans in the forseeable future or that she is likely to change jobs. Without that type of evidence, it makes no difference how large defendant is. Plaintiff is simply speculating, which is not enough to create a justiciable controversy. *Schirmer v. Nagode,* 621 F.3d 581, 585 (7th Cir.2010) (to establish standing, plaintiff must show that "it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury"). If I adopted her view, it presumably would give any employee whose employer has the option of purchasing a health plan through defendant standing to challenge the validity of defendant's policies and procedures.

Plaintiff cites a number of cases upholding injunctions in Title VII cases, but none of these are instructive because in each case the plaintiff was still employed by the defendant at the time the court ordered relief. *Dombeck v. Milwaukee Valve Co.,* 40 F.3d 230, 238 (7th Cir.1994); *USEEOC v. Gurnee Inn Corp.,* 914 F.2d 815, 816–17 (7th Cir.1990); *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194, 1202 (7th Cir. 1971). In this case, plaintiff no longer has any relationship with defendant and she points to no specific facts suggesting that she will have one in the future.

## B. *Attorney Fees*

The last question is whether plaintiff is entitled to attorney fees under 29 U.S.C. § 1132(g)(1), which authorizes "the

court in its discretion [to] allow a reasonable attorney's fee and costs of action to either party." The Supreme Court has interpreted this provision using the standard in *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983), to mean that a party must have "some degree of success on the merits" before a court may award attorney's fees. *Hardt v. Reliance Standard Life Insurance Co.*, ——— U.S. ———, 130 S.Ct. 2149, 2158, 176 L.Ed.2d 998 (2010). This is a more lenient standard than "prevailing party," but a "claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y].'" *Id.* at 2158 (quoting *Ruckelshaus*, 463 U.S. at 688 n. 9, 103 S.Ct. 3274).

Plaintiff relies on two factors in support of her argument that she is entitled to attorney fees: (1) changes that defendant has made to its policies and practices; and (2) the decision of the court of appeals remanding the case. With respect to the changes defendant made, plaintiff is relying on the "catalyst theory," although she does not use that term. The catalyst theory "posits that, for purposes of determining an award of attorneys' fees, a plaintiff prevails if he achieves the desired outcome of litigation even if it results from a voluntary change in the defendant's conduct." *Bingham v. New Berlin School District*, 550 F.3d 601, 603 (7th Cir.2008). Plaintiff's theory is that defendant made changes to its policies and procedures to clarify some of the ambiguities that led to the confusion in this case.

Plaintiff points to three changes in particular. First, beginning on August 9, 2010, calls to defendant's customer service number hear a pre-recorded message:

> It is always our goal to provide you with accurate benefit information. However, the benefit information provided over the phone by the Dean Health Plan Customer Care Center does not supersede your written plan policy and all claims will be processed according to the details of your written policy.

Plt.'s PFOF ¶ 7, dkt. # 101. Second, effective October 1, 2010, defendant added the following to the group member certificate:

> Our Customer Care Center will attempt to assist you. However, no information provided by the Customer Care Center shall change or alter terms of this Certificate and your Schedule of Benefits. You must consult your Certificate and Schedule of Benefits to verify your coverage, obligations, and responsibilities under the Policy.

*Id.* at ¶ 5. Finally, defendant's hospital manual now requires hospitals to inform defendant 5–7 days in advance that a plan participant is going to be admitted to the hospital for a particular procedure. *Id.* at ¶ 13.

Applying the catalyst theory to this case has a number of potential problems. To begin with, plaintiff did not seek any changes to defendant's policies and practices until she filed her second amended complaint in September 2010. Defendant made the first change in August 2010; the second change became *effective* on October 1, suggesting that defendant made the change before then; and plaintiff does not identify when defendant made the third change. To the extent defendant made changes before plaintiff even asked for them, it is difficult for her to argue that they were part of her "desired outcome of litigation." *Bingham*, 550 F.3d at 603. With respect to the third change, plaintiff does not even explain how it relates to any of the relief she requested in this case. *Association of California Water Agencies v. Evans*, 386 F.3d 879, 886 (9th Cir.2004) (under catalyst theory, plaintiff must show causal connection between relief she

sought in her complaint and relief obtained).

Second, it is not clear whether the catalyst theory even applies to § 1132(g)(1). The Supreme Court has rejected the catalyst theory with respect to fee-shifting statutes using the "prevailing party" standard, on the ground that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). It is not immediately apparent why a different rule would apply to § 1132(g)(1). In *Ruckelshaus,* 463 U.S. at 688 n. 9, 103 S.Ct. 3274, the Court stated that the "some degree of success" standard "was meant to expand the class of parties eligible for fee awards from prevailing parties to partially prevailing parties—parties achieving some success, even if not major success." This suggests that the standard in *Ruckelshaus* is more lenient with respect to *how much* a party must prevail, that is, the number or importance of the issues on which the party obtains relief. However, it is difficult to see why it would change the *type* of result that qualifies as success, that is, whether the plaintiff achieves relief through a court order or voluntary cessation of conduct.

Neither side cites any case law in which a court has considered whether the catalyst theory is applicable to § 1132(g)(1), but my own research has uncovered decisions in which the court relied on dictum in *Ruckelshaus* to conclude that the catalyst theory is alive and well for any statute governed by the standard in that case. *Ohio River Valley Environmental Coalition, Inc. v. Green Valley Coal Co.,* 511 F.3d 407, 414 (4th Cir.2007) ("Congress intended ... to allow fee recovery for "suits that force[ ] defendants to abandon illegal conduct, although without a formal court order." ") (quoting *Ruckelshaus,* 463 U.S. at 686 n. 8, 103 S.Ct. 3274); *Sierra Club v. EPA,* 322 F.3d 718 (D.C.Cir.2003) (Clean Air Act); *Loggerhead Turtle v. County Council,* 307 F.3d 1318 (11th Cir. 2002) (Endangered Species Act). But *see Center for Biological Diversity v. Norton,* 262 F.3d 1077, 1080 n. 2 (10th Cir.2001) (declining to resolve question whether *Buckhannon* undermines *Ruckelshaus's* dictum). However, none of these courts explain the logic in concluding that court-ordered relief is required to show that a party has "prevailed," but not required to show that the party has "partially prevailed."

If I assume that the catalyst theory applies to § 1132(g)(1), another question is whether plaintiff meets the standard for it. It does not seem that the Court of Appeals for the Seventh Circuit ever has applied the theory, but other courts have held that the plaintiff must show that the change "was required by law and was not a gratuitous act of the defendant." *Greater Los Angeles Council on Deafness v. Community Television of Southern California,* 813 F.2d 217, 220 (9th Cir.1987); *see also Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir.1978) ("If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense."). Because none of plaintiff's requests for injunctive relief are justiciable, this makes it more difficult for her to argue that the change was "required by law," at least as to plaintiff.

With respect to the decision of the court of appeals vacating and remanding the case, in *Hardt* the Supreme Court left

open the question whether "whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1)." *Hardt*, 130 S.Ct. at 2159. The Court did not need to resolve the question because the plaintiff in that case ultimately was awarded benefits. *Id.* at 2158.

In *Quinn v. Blue Cross and Blue Shield Association*, 161 F.3d 472, 478–79 (7th Cir. 1998), the court concluded that a remand was not sufficient to justify an award of fees under § 1132(g)(1). The continuing viability of *Quinn* is unclear after *Hardt* because in *Quinn* the court applied a "prevailing party" standard. However, even under *Hardt*, an award of attorney fees is not permitted for a "purely procedural victory," which is all that plaintiff obtained from the court of appeals in this case. The court did not conclude that plaintiff was entitled to relief or even to a trial; rather, the court concluded that defendant had failed to show on one of plaintiff's three claims that it was entitled to summary judgment on the grounds it asserted on appeal. However, the court made it clear that it was "remand[ing] for a determination as to whether Kenseth is seeking any form of equitable relief that is authorized by 29 U.S.C. § 1132(a)(3)." *Kenseth*, 610 F.3d at 483. If she was not, "then she will have failed to make out a claim on which relief may be granted, and the claim may be dismissed on that basis." *Id.* Now that I have concluded that plaintiff is not entitled to any relief, plaintiff cannot argue successfully that she has had "some success" on her claim.

Plaintiff cites *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 748 F.Supp.2d 903, 910–11 (N.D.Ill.2010), in which the court noted that "at least two district courts post-*Hardt* have found a remand alone enough to meet *Hardt's*

'some success' standard." *Id.* (citing *Blajei v. Sedgwick Claims Management Services, Inc.*, No. 09–13232, 2010 WL 3855239, at *3–4 (E.D.Mich. Sept. 28, 2010); *Richards v. Johnson & Johnson*, No. 2:08–CV–279, 2010 WL 3219133, at *3 (E.D.Tenn. Aug. 12, 2010)). Neither *Blajei* nor *Richards* is on point because both cases involved a remand *to the administrator* after a finding that the decision denying benefits was arbitrary and capricious. Thus, in both cases the plaintiff received all the relief it could from the district court.

▆▆▆▆ In any event, even of I concluded that the remand, the changes to the policies or both were enough to qualify as "some success" under Hardt, plaintiff still would have to show that defendant's position was not "substantially justified," *Lowe v. McGraw–Hill Companies, Inc.*, 361 F.3d 335, 339 (7th Cir.2004), something plaintiff does not even attempt to argue. Hardt did not call into question this aspect of this circuit's standard for awarding attorney fees because the requirement of substantial justification has nothing to do with plaintiff's degree of success; it addresses the question when it is appropriate for a court to exercise its discretion to award fees after a party meets the threshold for eligibility. In light of this court's initial conclusion that defendant was entitled to summary judgment on the breach of fiduciary claim and the fact that the court of appeals issued a 65–page slip opinion on the merits of that claim, I cannot conclude that defendant's position lacked substantial justification.

## ORDER

IT IS ORDERED that plaintiff Deborah Kenseth's motion for summary judgment, dkt. # 65, is DENIED, and defendant Dean Health Plan, Inc.'s motion for summary judgment, dkt. # 62, is GRANTED.

The clerk of court is directed to enter judgment in favor of defendant and close this case.